UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GABRIEL LOPEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRIDGESTONE AMERICAS TIRE )<br>OPERATIONS, )<br>LLC, d/b/a GCR TIRE CENTERS, and BRAD )<br>RAGAN )<br>RECYCLING, INC., d/b/a B R TIRE, a/k/a )<br>B R RETREADING, )<br>)<br>Defendants. ) | No. 2-11-CV-00054-JVB-PRC |

**MEMORANDUM OF LAW IN SUPPORT OF BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Gabriel Lopez cannot establish essential elements of either his claim for product liability or negligence against Defendant Bridgestone Americas Tire Operations, LLC, d/b/a GCR Tire Centers ("Bridgestone Americas"). Bridgestone Americas, therefore, respectfully submits this memorandum of law in support of its Motion for Summary Judgment.

**STATEMENT OF MATERIAL FACTS**

Bridgestone Americas, pursuant to Local Rule 56-1(a) of the Rules of Civil Procedure, submits this Statement of Material Facts in support of its Motion for Summary Judgment:

1. This is a personal injury action arising from an accident that occurred on February 15, 2009, when a tire ruptured and injured plaintiff Gabriel Lopez at U.S. Steel Corporation, Gary Works, in Gary Indiana. (Dkt. 1, Compl. ¶¶ 5, 6.)

2. Lopez alleges that the tire mounted on the vehicle he was operating, identified as a Bridgestone tire, serial number S6B004828, failed violently. (*Id.* ¶ 6.)

3. Lopez alleges that defendant Bridgestone Americas d/b/a GCR Tire Centers was responsible for selling the tire, maintaining the tire, and checking the tire pressure of the tire pursuant to an agreement with U.S. Steel Corporation. (*Id.* ¶ 7.)

4. Expert discovery is complete and no expert contends that the tire was in any respect defective, or improperly designed or manufactured, as it was originally sold and supplied. Instead, all expert opinions focus only on the causal role of subsequent maintenance and repairs to the tire. (Exhibit 1, Expert Report of James Gardner; Exhibit 2, Expert Report of James Casassa; Exhibit 3, Expert Report of Marvin Bozarth.)

5. In January of 2008, defendant Brad Ragan Recycling, Inc./BR Retreading performed a retread of the tire section repair and performed a radial section repair on the tire. (Exh.1, at 2; Dkt. 1, Compl. ¶ 8.)

6. Lopez has hired James Casassa as his tire expert in this case, and Casassa has opined that the tire failed due to an improper repair, an improper decision to repair the tire instead of remove the tire from service, or a combination of both. (Exh. 2; Exhibit 4, Mar. 13, 2012 Casassa Dep. Tr., 92:1-92:12; 95:17-96:17.)

7. Casassa testified that it is his assumption that both the decision to repair the tire and how the tire was repaired were both conducted by BR Retreading. (Exh. 4, 96:13-96:17.)

8. Casassa has no opinion critical of the conduct of Bridgestone Americas with regard to any evaluation of the tire, or decision to perform a section repair, and testified:

> Q. And just to be clear, then, you don't have a specific opinion about the conduct of GCR with regard to any evaluation of the tire or a decision about the section repair because you don't know specifically what their role was in this case?
>
> A. That's correct.
>
> Q. All right. And so you certainly don't hold an opinion critical of the GCR Tire Center in this case because you don't have facts upon which to base on opinion?

2

  A. That's correct based on the information I have at this point, yes.

(Exh. 4, 83:22-84:9.)

  9. BR Retreading has hired Marvin Bozarth as its tire expert in this case, and Bozarth has opined that the tire failed not as a result of the repair, but as a result of being operated in an underinflated condition, potentially due to a lapse in service the week before the accident. (Exh. 3.)

  10. Bozarth's material opinions do not meet the reliability requirements of *Daubert* or Rule 702. (Dkts. 74 and 75, Motion to Exclude Expert Testimony of Marvin Bozarth and supporting Memorandum.)

  11. Bozarth opines that air pressure in a tire should be checked every three days and that there was a lapse in service during the last week of the tire's use. (Exhibit 5, 30, 2012 Bozarth Dep. Tr., 131:10-131:16.)

  12. Bozarth testified that he does not have an opinion that the air in the tire lost air between February 10 and February 15, 2009, that the tire actually was low prior to the accident, or that checking the air pressure within the five days prior to the accident would have prevented the accident. (*Id.*, 134:2-135:8.)

  13. Bozarth concludes that the rupture was caused by fatigue from long service in overloaded and underinflated conditions. (Exh. 3, at 4.)

  14. Bozarth testified that he cannot determine whether the tire was in fact underinflated immediately before the accident, and that there is no forensic evidence to determine when the tire operated in an underinflated condition. (Exh. 5, 123:5-123:22.)

15.     Bozarth testified that he does not hold an opinion to a reasonable degree of professional certainty that the tire was ever underinflated as opposed to overloaded. (*Id.*, 124:14-125:11.)

## BACKGROUND

The accident in this case occurred on February 15, 2009 while plaintiff Gabriel Lopez was engaged in his job as a truck operator at U.S. Steel's facility in Gary, Indiana. (Statement of Material Facts ("Material Facts"), ¶ 1.) Lopez alleges that he was injured when the tire mounted on U.S. Steel's vehicle failed. (*Id.* ¶ 2.)

The tire at issue is a Bridgestone V-Steel 00R35 off the road, earthmoving type tire. (Exh. 1, at 6.) Bridgestone Americas' GCR division supplied the tire and installed it on one of U.S. Steel's fleet of trucks on January 7, 2007, over two years before the accident. (Exhibit 6, Bridgestone Americas' Responses and Objections to Interrogatories, at 4.) During the period relevant to the accident, Bridgestone Americas contracted with U.S. Steel to perform installation and routine maintenance functions on the tires in use at the Gary Works facility, including the subject tire. (Material Facts, ¶ 3.) As part of its maintenance protocol, tires were inspected and inflation pressures were checked on a weekly basis. Records reveal that the subject tire was last inspected five days before the subject accident. (Exhibit 7, Safety Flash.)

Approximately four months after the subject tire was first installed at U.S. Steel, it was removed from service to be retreaded by a company named Polar Rubber. (Exh. 1, at 6.) In January 2008, defendant BR Retreading again retreaded the tire, and performed a large "section repair" procedure to address an injury to the tire's sidewall. (*Id.* ¶ 5.) The tire was then returned to U.S. Steel, and was placed back into service on the truck assigned to Lopez approximately one year before the accident. (Exhibit 8, GCR Service Work Order.)

4

Lopez has asserted two causes of action against Bridgestone Americas, one for product liability, and one for negligence. (Dkt. 1.) There is no claim that the tire was defective or improperly manufactured as supplied by Bridgestone Americas in 2007. (Material Facts, ¶ 4.) All of the expert theories of liability focus on the maintenance and repairs the tire received after that time. Lopez's expert, Casassa, has opined that the tire failed as a result of the improper retread, or improper decision to retread the tire at all, both of which he attributes to BR Retreading. (*Id.* ¶¶ 6-8.) Bridgestone Americas expert similarly opines that the tire failed as a result of an improper repair. (Exh. 1.)

BR Retreading's expert, Bozarth, opines that the failure that the tire failed not as a result of the repair, but as a result of being operated in an underinflated condition due to a lapse in service the week before the accident. (Material Facts, ¶ 9.) Bozarth's opinions, however, do not meet the standards set forth in *Daubert* or under Rule 702 of the Federal Rules of Evidence. (Dkt. 75.) But even were the Court to consider Bozarth's inadmissible opinions, Bozarth cannot show that the tire's failure was in any way causally related to the conduct of Bridgestone Americas. (Material Facts, ¶¶ 14-15.)

**ARGUMENT**

**I.     Summary Judgment Standard**

Summary judgment should be granted if, after drawing all reasonable inferences and construing all facts in a light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-55 (1986); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). A factual dispute is genuine only if the evidence is such that a reasonable jury could find in favor of the non-moving party. *Carroll v. Lynch*, 698 F.3d

561, 564 (7th Cir. 2012.)  Once the moving party establishes that there are no genuine issues of material fact, the burden shifts to the opposing party to provide evidence of specific facts creating a genuine dispute.  *Id.*  "Mere 'metaphysical doubt as to the material facts' is not enough."  *Id.*  Summary judgment is proper, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**II.     There is No Evidence that the Tire was Defective or Improperly Produced**

There is no genuine dispute that Bridgestone Americas is entitled to summary judgment on plaintiff's product liability claim as a matter of Indiana law because there is no evidence that a defect existed in the tire.

In Indiana, the Indiana Products Liability Act ("IPLA") governs all actions that are "(1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought."  Ind. Code § 34-20-1-1.  To succeed under a claim under the IPLA, the plaintiff must "present evidence from which a jury could reasonably conclude that the Defendant put into the stream of commerce a product in a defective condition unreasonably dangerous to any user of consumer."  *Kucik v. Yamaha Motor Cor., U.S.A.*, No. 2:08-CV-161-TS, 2010 WL 2694962, at *4 (N.D. Ind. July 2, 2010) (internal quotations omitted).  A product may be defective within the meaning of the IPLA because of a manufacturing flaw, a design defect, or a failure to warn of the dangers associated with the product's use.  *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 319 (Ind. Ct. App. 2009).  "Where the existence of a defect depends on matters beyond the common understanding of a lay juror, admissible expert testimony is required to sustain the plaintiff's

burden of proof on the question." *Kuick*, 2010 WL 2694962, at *4 (citing *Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1103-04 (S.D. Ind. 2003)).

Lopez has not alleged, and no expert has suggested that the tire suffered from manufacturing flaw, a design defect, or that Bridgestone Americas failed to warn of the dangers associated with the tire's use. Lopez's expert opined that the tire failed because of a defect in the repair of the tire. (Material Facts, ¶¶ 6-8.) Assuming BR Retreading's expert's opinions are admissible (they are not), even he fails to identify any defect in the tire. Instead, he claims that the accident is a result of the tire being underinflated due to a lapse in service the week before the accident. (*Id.* ¶ 9.)

It is well established that a tire failure cannot be presumed to be the result of a defect − because tires can fail as a result of service conditions and damage, proof of defect requires direct evidence based upon the specific condition of the tire at issue. *See Morris v. Ford Motor Co.,* No. IP01-5166-C-B/S (MDL No. 1373) (S.D. Ind. 2002); *Sanchez v. Firestone Tire & Rubber Co.*, 604 N.E.2d 948 (Ill. App. 1992); *Tirey v. Firestone Tire & Rubber Co.*, 513 N.E.2d 825 (Ohio App. 1986); *Scott v. Freuhauf Corp.*, 602 F. Supp. 207 (S.D. Ill. 1985); *Dunlop Tire & Rubber Co.*, 304 S.E.2d 773, 781-82 (N.C. App. 1983); *Cassetta v. U.S. Rubber Co.*, 260 Cal. App. 2d 792, 804-05 (Cal. App. 1968); *Shramek v. Gen. Motors Corp.*, 216 N.E.2d 244 (Ill. App. 1966); *Williams v. U.S. Royal Tires*, 101 So. 2d 488 (La. Ct. App. 1958).

No genuine issue of material fact exists regarding whether any alleged defect in the tire proximately caused the sidewall of the tire to rupture, or Lopez's injuries, and summary judgment in favor of Bridgestone Americas on this claim is appropriate.

**III.     There is No Evidence Establishing A Reasonable Connection Between Bridgestone Americas Conduct and the Tire Failure**

The material facts demonstrate that Lopez cannot meet his burden to establish a claim of negligence against Bridgestone Americas – there is no admissible evidence that causally links the accident to any act or failure to act on the part of Bridgestone Americas.

As fully set forth in Bridgestone America's accompanying *Daubert* motion seeking to exclude a number of Bozarth's opinions, Bozarth's opinion that the tire failed not as a result of the repair, but as a result of being operated in an underinflated condition due to a lapse in service the week before the accident, is unreliable and must be excluded.  Without Bozarth's opinion, there is no evidence that raises the mere possibility that the cause of the accident was related to any act or failure to act on the part of Bridgestone Americas.  But even if Bozarth's opinions are not excluded, he cannot establish, and has offered no opinion, that the tire ruptured as a result of Bridgestone America's conduct.

To establish negligence under Indiana Law a plaintiff must prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty caused the injury.  *Eubanks v. Norfolk Southern Ry. Co.*, 875 F.Supp. 2d 893, 909 (N.D. Ind. 2012).  Negligence cannot be inferred from the fact that an accident occurred, and the" plaintiff must prove the defendant's wrongful act was the cause in fact of the accident."  *Id.*  "Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict."  *Taylor v. Cmty. Hosp. of Indiana, Inc.*, 949 N.E.2d 361, 364 (Ind. App. Ct. 2011).

Without the testimony of Bozarth, the only admissible evidence regarding the cause of the tire failure is that of Lopez's expert, Casassa, and Bridgestone America's expert, Gardner.  Neither attributes any fault to Bridgestone Americas.  Gardner attributes the failure to the section

8

repair conducted by BR Retreading. (Exh. 1.) According to Casassa, the tire failed for a combination of one of two reasons: (1) an improper repair, or (2) an improper decision to repair the tire instead of remove the tire from service. (Material Facts, ¶ 6.) There is no dispute that BR Retreading performed the repair. (*Id.* ¶ 5.)

Both Casassa and Bozarth agree on two general propositions. First, that the retreader is responsible for evaluating the tire and making a determination as to whether the tire can be repaired or whether it should be taken out of service. (Exh. 3, 74:4-74:8, 117:5-117:10; Exh. 4, 82:15-83:25.) As Casassa testified, the entity that actually performed the section repair − BR Retreading − would be in a better position to inspect the tire and evaluate whether it should be repaired after it dissected the area of the tire where the repair was to take place. (Exh. 4, 90:8-90:12.) Bozarth agreed, noting that as the retreader makes the repair, the retreader will be able to evaluate the internal components of the tire. (Exh. 3, 117:11-117:16.) Second, that the once the decision to make a repair is made, the repair must be made properly. (*Id.*, 117:22-117:25; Exh. 4, 84:17-84:24.)

In addition to performing the repair, Casassa believes that BR Retreading was also responsible for the decision to repair the tire instead of retire the tire from service. (Material Facts, ¶ 7; Exh. 4, 70:5-70:22; 77:10-77:14; 79:9-79:13; 92:1-92:12; 96:13-96:17.) Importantly, Casassa has *no opinion* about the conduct of Bridgestone Americas with regard to any evaluation of the tire, or decision to perform a section repair. (Material Facts, ¶ 8.) Moreover, Casassa stated that there is no evidence of general overdeflection, a result of overloading the truck beyond its capacity, or underinflation. (Exh. 4, 69:7-11; 105:24-106:22.) Without Bozarth's inadmissible opinions, no genuine issues of material fact exist regarding whether Bridgestone America's conduct played any role in either conducting the repair itself, or in the decision to

repair the tire instead of retiring the tire from service. Summary judgment in favor of Bridgestone Americas is appropriate.

"An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered." *Taylor*, 949 N.E.2d at 364. Even with Bozarth's inadmissible opinions, there is still no reasonable connection between any Bridgestone Americas conduct and the failure of the tire. Bozarth's only opinions that touch upon Bridgestone Americas' conduct are his opinion that 1) air pressure should be checked every three days, and 2) that the rupture was caused by fatigue from long service in overloaded and underinflated conditions. (Material Facts, ¶ 9; Exh. 3, 123:5-123:23; 132:8-133:18.)

There is no dispute that Bridgestone Americas was responsible for checking the air pressure of the tire, or the air pressure was not checked within three days of the accident. Exh. 7.) Even so, Bozarth has no opinion that the failure to check the air pressure within three days prior to the accident would have prevented the accident. (Material Facts, ¶ 12.) Moreover, Bozarth does not hold an opinion that the tire was actually underinflated at the time of the accident, or that the tire was ever underinflated. (*Id.* ¶¶ 14, 15.)

Bozarth's opinions do not establish a reasonable connection between any failure to check the air pressure of the tire three days prior to the accident and the tire failure here, and his opinions lack reasonable certainty or probability. But "negligence cannot be established through inferential speculation alone." *Taylor*, 949 N.E.2d at 364 (quoting *Hale v. Cmty. Hosp. of Indianapolis, Inc.*, 567 N.E.2d 842, 843 (Ind. Ct. App. 1991). Thus, even considering Bozarth's unfounded and speculative opinions, summary judgment in favor of Bridgestone Americas is still proper.

10

## CONCLUSION

Lopez cannot establish, and has not even alleged, the crucial element in his product liability claim, that the tire suffered a defect. Moreover, there is simply no evidence establishing a reasonable connection between Bridgestone Americas' conduct and the tire failure. Bridgestone respectfully requests that the Court enter an order granting summary judgment in its favor on Counts I and II of Lopez's complaint.

        Defendant

        BRIDGESTONE AMERICAS TIRE
        OPERATIONS, LLC,
        d/b/a GCR TIRE CENTERS

        By:    */s/ Anna Krasinski*
                One of its Attorneys

Colin Smith
Robert Tonn
Anna Krasinski
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Fl.
Chicago, IL 60603
(312) 263-3600
(312) 578-6666 (fax)

## **CERTIFICATE OF SERVICE**

      I, the undersigned attorney, certify that **Memorandum of Law in Support of Bridgestone Americas Tire Operations, LLC's Motion for Summary Judgment** was electronically filed and service was accomplished pursuant to the ECF for filing users on this the 26th day of January, 2013.

                                              By:  */s/ Anna Krasinski*